# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 11-140V
**Filed: February 10, 2016**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | UNPUBLISHED |
| SHERRY SALMINS, | * | |
| | * | |
| Petitioner, | * | Chief Special Master Dorsey |
| | * | |
| v. | * | |
| | * | Attorneys' Fees & Costs; |
| SECRETARY OF HEALTH | * | Excessive Fees and Costs |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

Meredith Daniels and Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
Jennifer L. Reynaud, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On March 31, 2014, the undersigned issued a Ruling on Entitlement, finding petitioner entitled to compensation based on an injury caused-in-fact by a covered vaccine. Respondent filed a Proffer on an award of compensation on June 11, 2015, and the undersigned issued a Decision pursuant to the Proffer on June 15, 2015.

On December 3, 2015, petitioner filed an application for attorneys' fees and costs, requesting $102,851.95 in attorneys' fees,[2] $43,619.16 in attorneys' costs, and $250.00 for petitioner's costs, for a total fees and costs award of $146,721.11. Petitioner's ("Pet'r's") Application ("App") at 1. Respondent filed a response to petitioner's application on December 4,

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The calculations used in petitioner's application for attorneys' fees are based on the rates awarded in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

1

2015, stating that she defers to the special master's statutory discretion in determining a reasonable fee award for this case. Respondent's ("Resp's") Response at 2.

For the reasons set forth below, the undersigned awards petitioner $136,068.36 in reimbursement for fees and costs.

## I. Procedural History

On March 7, 2011, Sherry Salmins ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[3] 42 U.S.C. §§ 300aa-10 to -34 (2012). Petitioner alleged that as a result of receiving a Human Papillomavirus ("HPV") vaccine on January 27, 2009, she developed Guillain-Barré Syndrome. Amended Petition at Preamble. Further, petitioner alleged that she experienced residual effects of her injury for more than six months. Id. at ¶ 38.

An entitlement hearing was held on August 21, 2013, in Washington, D.C. A Ruling on Entitlement, finding that petitioner is entitled to compensation based on an injury caused-in-fact by a covered vaccine, was issued on March 31, 2014. On April 3, 2014, a damages order was issued. Respondent filed a Proffer on an award of compensation on June 11, 2015. The undersigned issued a Decision pursuant to respondent's Proffer on June 15, 2015, awarding petitioner a lump sum payment of $1,405,466.39 and an amount sufficient to purchase an annuity contract described in section II, paragraph B of the Proffer.

On December 3, 2015, petitioner filed an application for attorneys' fees and costs, requesting: $102,851.95 in fees, $43,619.16 in attorney costs, and $250.00 in petitioner's costs. Respondent filed a response to petitioner's application on December 4, 2015, stating that while she disagrees with the analysis and findings in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), she has determined that her resources are not wisely used by continuing to litigate the issues addressed in that decision, and she respectfully defers to the special master's statutory discretion in determining a reasonable fee award for this case. Resp's Response at 1-2. Petitioner did not file a reply to respondent's response. This matter is now ripe for adjudication.

## II. Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(3)(1). Petitioner in this case was awarded compensation pursuant to a Ruling on Entitlement and respondent's Proffer on an award of compensation, and therefore is entitled to an award of reasonable attorneys' fees and costs.

### a. Reasonable Attorneys' Fees

---

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### i. Hourly Rates

In 2006, the parties' counsel in this case reached an agreement on the hourly rates for Conway, Homer & Chin-Caplan ("CHCC") attorneys, paralegals, and law clerks based upon prevailing rates in the Boston area. See Carr v. Sec'y of Health & Human Servs., No. 00-778V, 2006 WL 1073032, at *1-4 (Fed. Cl. Spec. Mstr. Mar. 29, 2006). The Carr agreement was entered into two years before the seminal Avera case, which established that a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees. Avera, 515 F.3d at 1348. At the same time, the court also adopted the Davis County exception to the forum rate rule to prevent windfalls to attorneys who work in less expensive legal markets. Id. at 1349 (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). Recently, CHCC has been requesting rates higher than the rates to which the parties agreed in Carr. See, e.g., McCulloch, 2015 WL 5634323.

The issue of an appropriate hourly rate for the attorneys, paralegals, and law clerks at CHCC was recently ruled upon in McCulloch. The undersigned fully agrees with the McCulloch analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC and will use the same hourly rates used in that decision. Those rates were utilized in Petitioner's Application for Attorneys' Fees and Costs. Using the McCulloch rate, the total amount of attorneys' fees that CHCC has requested is $102,851.95.

### ii. Unnecessary Time Billed by Multiple Attorneys

The invoice of CHCC billing entries in the fee application reflects fees charged for over 515 hours of work performed by seven attorneys along with several paralegals and law clerks. See

3

Pet'r's App, Tab A. The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on the same case. CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms. See Sabella, 86 Fed. Cl. at 214-15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin v. Sec'y of Health & Human Servs., 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health & Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health & Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client).

The undersigned finds some of petitioner's requested fees unreasonable, unnecessary, and duplicative. The number of attorneys who billed time in this case is excessive and unnecessary. Seven different attorneys worked on petitioner's file. This amount of attorney involvement is not justifiable, especially given that some of the attorneys billed fairly minimal hours. For example, Ms. Schwader (formerly Ms. Fashano), billed a total of seven tenths of an hour on this case, for time spent editing and reviewing documents. See Pet'r's App, Tab A, at 15, 31, 34, 41, 45, 46. Similarly, Mr. Pepper billed a total of four and six tenths hours, the majority of which was spent reviewing documents. Id. at 15, 18, 22, 23, 37, 38, 41, 43, 48, 51, 52, 55, 57. Petitioner has not offered any explanation for why so many attorneys worked on routine filings in this case, and the undersigned believes such firm-wide involvement is unnecessary.

Four of the seven attorneys who worked on the file are partners, including Mr. Conway, Mr. Homer, Ms. Chin-Caplan, and Ms. Ciampolillo, all of whom are experienced Vaccine Program attorneys. Petitioner has not provided an explanation as to why the involvement of this many partners in a single case is necessary.

The undersigned finds that CHCC billed excessive time for intra-office communications, including meetings. Throughout petitioner's case, numerous intra-office meetings and conferences were held between partners, partners and other attorneys, and partners and paralegals. See, e.g., Pet'r's App, Tab A, at 7, 19, 22, 32, 53, 55. In petitioner's application for fees, there are at least 120 such entries, representing over sixty individual meetings (almost all of which were billed by both attendees), for a total of over thirty-one hours. See generally, Pet'r's App, Tab A. Petitioner has not offered any explanation as to why it was necessary to bill for so many meetings. The undersigned finds these billing entries excessive.

In addition, the undersigned finds that the reviewing of documents by multiple attorneys led to excessive billing in this case. For example, Mr. Homer billed time to review case filings. In petitioner's application for fees, there are at least fifty-nine such entries, totaling six and two tenths hours, in which Mr. Homer billed time to review orders and other filings in petitioner's case. While it is true that Mr. Homer is the attorney of record in petitioner's case, the primary attorneys working on the file must also review all Orders and pleadings so as to be informed of the status of the case and comply with deadlines. It would be difficult, if not impossible, for Ms. Ciampolillo, who drafted a majority of petitioner's status reports, to draft a status report in compliance with an Order without first reviewing that order. Thus, much of Mr. Homer's time billing for reviewing case

filings is unnecessary and duplicative.[4]

Similarly, the undersigned finds it unnecessary that multiple attorneys were often involved in preparing documents for filing. Two partners and law clerks collectively billed eight and eight tenths hours for drafting and editing the petition. See Pet'r's App, Tab A, at 10-11. In addition, many status reports were reviewed by a second attorney before filing. Such reviews occurred on at least sixteen occasions. See, e.g., id. at 18, 34, 41, 46, 51, 53. Petitioner has not offered a reasonable explanation as to why it is necessary for multiples attorneys to draft, edit, and review documents, especially routine filings such as status reports.

For all of these reasons, the undersigned will reduce petitioner's entire fee award by ten percent. **The undersigned reduces petitioner's requested attorneys' fees by $10,285.20.**

### b. Costs

Petitioner's counsel requests $516.06 in reimbursement for the cost of a hotel room for Ms. Campolillo at the Sofitel in Washington, D.C. on the night of August 20, 2013, the night before the entitlement hearing. See Pet'r's App, Tab B, at 27. The Sofitel is a four-star hotel, and Ms. Campolillo stayed in a "Junior Suite," which according to the Sofitel's website[5] has "1 king-size bed, pull-out sofa in separate living room area, interior view." The base rate for Ms. Campolillo's room was $450.00 per night. Pet'r's App, Tab B at 27. Similarly, petitioner's counsel requests $451.49 in reimbursement for the cost of a hotel room and parking at the Sofitel for her expert, Nizar Souyah, for the same night. See id. at 37. Petitioner's motion does not indicate what type of room Dr. Souyah stayed in, but the base room rate was $350.00 per night. Pet'r's App, Tab B at 37.

The undersigned noted that there are at least nine hotels, including the Sofitel, within a three-block radius of the Office of Special Masters. According an internet search, these hotels all appear to be of comparable quality, as they are rated three, four, or five stars on Google. The rate Ms. Campolillo paid, $450.00 per night, appears on par with the cost of a comparable suite at another four-star hotel nearby, such as the W or the St. Regis.[6] However, regular rooms with king-size beds at those same hotels start at less than $350.00 per night. A regular room with a king-size bed at the Sofitel itself starts at only $236.00 per night. In addition, at three-star hotels in the area, such as the Hyatt Place or the Hilton Garden Inn, suites start at about $260.00 per night, and regular rooms with king-size beds start at less than $230.00 per night. Given that there are numerous hotels in the immediate vicinity of the Office of Special Masters, most of which appear to offer rooms that are less expensive than the ones Ms. Campolillo and Dr. Souyah stayed in, the undersigned finds the requested costs excessive. Accordingly, the undersigned will award $300.00 for Ms. Campolillo's

---

[4] The undersigned also notes that the justification for Mr. Homer's hourly billing rate of $400 per hour is his many years of experience in the Vaccine Program that have shaped his insight and judgment regarding vaccine cases. Mr. Homer is not using this insight and judgment when reviewing files and orders to track deadlines and assign tasks.

[5] See http://www.accorhotels.com/gb/hotel-3293-sofitel-washington-dc-lafayette-square/index.shtml.

[6] The rates set forth in this paragraph are the rates quoted on each hotel's website as of February 10, 2016, and represent rates for August, 2016.

5

hotel costs and $300.00 for Dr. Souyah's hotel and parking costs. **The undersigned therefore reduces petitioner's costs by $367.55.**

### III. Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

Petitioner's Application for Attorneys' Fees & Costs:

| | |
|---|---|
| Requested Attorneys' Fees: | $102,851.95 |
| Reductions: | $10,285.20 |
| Attorneys' Fees Awarded: | $92,566.75 |
| Requested Attorneys' Costs: | $43,619.16 |
| Reductions: | $367.55 |
| Costs Awarded: | $43,251.61 |

Petitioner's Costs:          $250.00

Total Fees & Costs Awarded:          $136.068.36

**Accordingly, the Court awards:**

   a. **$135,818.36** representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Conway, Homer & Chin-Caplan, P.C., in the amount of **$135,818.36.**

   b. **$250.00,** representing petitioner's costs. The award shall be in the form of a check made payable to petitioner for **$250.00.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[7]

   **IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.